# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| ANGIE D.,[1] | : | Case No. 2:22-cv-02425 |
| Plaintiff, | : : | Magistrate Judge Caroline H. Gentry |
| vs. | : : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in May 2015. Plaintiff's claim was denied initially and upon reconsideration. After two hearings at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for resolution of several issues. Upon remand, a different ALJ held a hearing and issued a written decision, again concluding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review of that decision. Plaintiff subsequently filed this action.

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

I.  **BACKGROUND**

Plaintiff asserts that she has been under a disability since December 12, 2013. At that time, she was thirty-seven years old. She was forty-three years old on the date last insured of June 30, 2019. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 9) is summarized in the ALJ's decision (AR, Doc. No. 9-3 at PageID 332-48), Plaintiff's Statement of Errors ("SE," Doc. No. 12), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 14), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II.  **STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1:   Plaintiff did not engage in substantial gainful activity from the alleged onset date of December 12, 2013 through the date last insured of June 30, 2019.
>
> Step 2:   She had the severe impairments of type II diabetes mellitus with diabetic polyneuropathy of the feet, morbid obesity, hypertension,

|  |  |
|---|---|
|  | osteoarthritis of the knee, degenerative disc disease, breast cancer, and posttraumatic stress disorder. |
| Step 3: | She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: [Plaintiff] was able to frequently reach overhead bilaterally. She was capable of occasional stooping, kneeling, crouching, crawling, climbing ramps or stairs, and operating push or pull controls with the lower extremities. She should not climb ladders, ropes or scaffolds. She should avoid concentrated exposure to extreme temperatures, high humidity, fumes, dust, gases, poor ventilation, respiratory irritants, and hazards, such as unprotected heights and dangerous moving mechanical parts. [Plaintiff] was able to understand, remember, and carry out simple routine tasks in low-stress work environments. A "low-stress job" in this context is defined as jobs having only occasional decision-making and occasional changes in work setting. She was able to have occasional contacts with co-workers and supervisors, however, she was unable to have any contact with the public.<br><br>Plaintiff has no past relevant work. |
| Step 5: | Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. |

(AR, Doc. No. 9-3 at PageID 335-48.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability and so was not entitled to benefits. (*Id.* at PageID 348.)

**B.     Treating Psychologist John McFadden, Psy.D.**

In a letter written in July 2016, treating psychologist Dr. McFadden stated:

5

> [Plaintiff] has recently had a series of medical issues along with psychological stress. This presently impairs her ability to concentrate, to maintain persistence in pace and to deal with the stresses often associated with typical sights [sic] of employment. I would certainly hope that these limitations will be temporary in nature but at the present time I believe she is not able to work in a job. She is presently being treated for an adjustment disorder.

(AR, Doc. No. 9-7 at PageID 1159.)

Dr. McFadden noted in an April 2018 progress note that Plaintiff reported experiencing "some of the memories of past trauma" which were "intrusive at times" and "disturbing emotionally." (AR, Doc. No. 9-8 at PageID 1628.) He opined that these memories "do interfere with her concentration and persistence." (*Id.*) He also noted that Plaintiff appeared to have good reasoning and "fairly good" insight and judgment. (*Id.*)

In February 2021, Dr. McFadden completed a checkbox questionnaire titled "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)." (AR, Doc. No. 9-12 at PageID 3341-42.) Dr. McFadden opined that Plaintiff was "seriously limited" in these areas of mental abilities and aptitudes required for unskilled work: maintaining attention for two-hour segments; completing a normal workday and workweek without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and dealing with normal work stress. (*Id.* at PageID 3341.) For semi-skilled and skilled work, Dr. McFadden opined that Plaintiff would be seriously limited in understanding and remembering detailed instructions, carrying out detailed instructions, and dealing with stress. (*Id.* at PageID 3342.) Dr. McFadden indicated "limited but satisfactory" abilities for interacting appropriately with the general public; maintaining socially appropriate behavior; and

6

traveling in unfamiliar places. (*Id.*) Dr. McFadden indicated an "unlimited or very good" ability to adhere to basic standards of neatness and cleanliness, and no limitation in the ability to use public transportation. (*Id.*) Finally, Dr. McFadden opined that Plaintiff would likely be absent from work for three days per month, due to her impairments or treatment. Dr. McFadden supported his opinion with this explanation: "Patient has significant anxiety and emotional/cognitive intrusions from posttraumatic stress disorder (PTSD) which impairs smooth performance." (*Id.*)

Overall, the ALJ assigned only partial weight to Dr. McFadden's opinions. (AR, Doc. No. 9-3 at PageID 345.) The ALJ explained:

> These opinions are granted partial weight pursuant to 20 CFR 404.1527. Specifically, great weight is given to Dr. McFadden's statements regarding [Plaintiff's] limitations in concentration, stress management, pace, and impaired ability to perform complex or detailed work (Exhibit 18F/1; 9F/21; 54F). These portions of the opinions are consistent with contemporaneous treatment records during the period at issue noting impaired concentration due to intrusive thoughts and poor sleep due to nightmares (Exhibit 9F/27, 26, 24, 22, 19, 17, 16, 13, 11, 9; 18F; 21F; 22F/12, 13, 11, 10, 9, 8, 7, 6, 4, 3, 2). Dr. McFadden's statement regarding her inability to work in 2016 is given no weight, as it is a conclusory statement regarding the ultimate issue of disability and as such is reserved for the Commissioner (Exhibit 9F/21). Dr. McFadden's statements concerning a high rate of absenteeism, and serious limitations in her ability to concentrate for two-hour segments are given little weight as they are inconsistent with records dated within the period at issue, which note improvement with therapy and medication, unremarkable mental status examination findings, and further indicate [Plaintiff's] ability to manage a variety of significant life stressors, including cancer treatment and financial hardship (Exhibit 9F/27, 17, 13, 12, 10; 31F). I acknowledge both Dr. McFadden's treating relationship with [Plaintiff], and his area of specialty in mental health, when assigning weight to his opinions, but note that this professional's most recent, and most restrictive, statement, was drafted long after the period at issue, and under significantly changed life circumstances for [Plaintiff], rendering portions unsupported and irrelevant to the current decision. Specifically, contemporaneous with Dr. McFadden's most recent

>statement in February of 2021, nearly two years after her date last insured for disability insurance benefits, she was recovering after both she and her spouse were hospitalized for COVID-19 complications, and was continuing to experience anxiety stemming from her December 2019 motor vehicle accident and the COVID-19 pandemic (Exhibit 42F/1, 2; 47F/2; 61F/7, 4). She was also experiencing increased symptoms in 2020 and 2021 due to a "reactivating event" (Exhibit 61F/5). These exacerbations did not exist during the period at issue, and in fact could not be contemplated at the time [Plaintiff's] coverage for disability insurance benefits expired.

(*Id.* at PageID 345-46.)

### IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred by failing to properly evaluate Dr. McFadden's opinions and adequately explain why he gave Dr. McFadden's opinions less than controlling weight. (SE, Doc. No. 12 at PageID 3826.) For the reasons discussed below, these arguments are not well-taken and the ALJ's decision is affirmed.

####    A.    Applicable Law

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 404.1527 apply. These regulations require ALJs to adhere to certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b), (c). Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(1). The "treating

8

physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

The treating physician rule does not require ALJs to ignore inconsistencies between a treating source's opinion and the opinions of other medical sources. Instead, an ALJ can "properly discount even a treating source opinion if the opinion is unsupported and inconsistent with other substantial evidence in the record." *Herndon v. Comm'r of Soc. Sec.*, No. 20-6094, 2021 U.S. App. LEXIS 15178, *15 (6th Cir. May 20, 2021).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific

9

reasons for the weight placed on a treating source's medical opinions." *Hargett*, 964 F.3d at 552 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[2]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*) The good reasons requirement cannot be satisfied with general and non-specific assertions of inconsistency with other evidence in the record. *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, *5 (6th Cir. Sept. 3, 2021).

A claimant's RFC is the most that she can do in a work setting despite physical and mental limitations caused by her "impairment(s), and any related symptoms, such as pain." 20 C.F.R. § 404.1545(a)(1). The ALJ is charged with the final responsibility for assessing a claimant's RFC and must base it on all relevant evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(1). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*. at *7.

---

[2] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

10

B. **The ALJ Partially Erred In His Evaluation Of Dr. McFadden's Opinions, But The Error Is Harmless**

Although the Court concludes that the ALJ erred when analyzing Dr. McFadden's opinions, it further concludes that the ALJ's errors are harmless. Therefore, the Court affirms the ALJ's decision.

As described above, the ALJ discussed and considered most of the opinions that Dr. McFadden set forth in the February 2021 checkbox form. The ALJ did not address, however, Dr. McFadden's opinion that Plaintiff was seriously limited in the ability to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms." (*Compare* AR, Doc. No. 9-12 at PageID 3341 *with* AR, Doc. No. 9-3 at PageID 345-46.)

Under the applicable regulations, ALJs must consider and evaluate *every* medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(c) (emphasis added). ALJs also generally must place more weight on the opinions of treating physicians who have examined the claimant, unless they are contradicted by substantial evidence. 20 C.F.R. § 404.1527(c)(1), (2); see *Keeton v. Comm'r of Soc. Sec.,* 583 F. App'x 515, 528 (6th Cir. 2014). By failing to consider this opinion in the February 2021 checkbox form, the ALJ did not evaluate every medical opinion from Dr. McFadden and describe good reasons for the weight assigned to each of them.

The Court may find that a violation of the good reasons requirement is harmless error if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating

11

source or makes findings consistent with the opinion; or (3) the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (citation omitted). In this case, the Court finds that the ALJ's violation of the good reasons rule is a harmless error.

As an initial matter, the Court notes that forms like the one that Dr. McFadden completed in February 2021—which require little more than checking a box and do not identify supporting objective medical evidence—constitute "weak evidence at best" and are patently deficient. *See, e.g., Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016); *Dollinger v. Comm'r of Soc. Sec.*, No. 22-3359, 2023 WL 1777386, at *4 (6th Cir. Feb. 6, 2023). Here, Dr. McFadden provided only a brief explanation for his checkbox opinions, and the explanation was vague and unsupported by objective medical evidence. Thus, the ALJ's failure to address this particular opinion on the checkbox form is a harmless error.

The Court also finds that the ALJ otherwise appropriately weighed the regulatory factors under 20 C.F.R. § 404.1527(c), and that his decision to assign partial weight to Dr. McFadden's opinions is supported by substantial evidence. The ALJ correctly found that the medical records for the relevant time period showed "improvement with therapy and medication, unremarkable mental status examination findings, and further indicate the claimant's ability to manage a variety of significant life stressors, including cancer treatment and financial hardship." (AR, Doc. No. 9-3 at PageID 345.)

During Dr. McFadden's initial evaluation in January 2016, Plaintiff reported sleep difficulties, nightmares, and "intrusive thoughts and recollections concerning past

trauma." (AR, Doc. No. 9-7 at PageID 1165-66.) The mental status examination, however, showed full orientation, cooperative behavior, no tangentiality or digression, no expansive moods or heightened energy, and fair insight and judgment. (*Id.*)

In later treatment notes, Dr. McFadden similarly noted subjective complaints related to depression and anxiety but documented few abnormal objective mental status findings. (*See, e.g.,* AR, Doc. No. 9-7 at PageID 1146-1164; AR, Doc. No. 9-8 at PageID 1628, 1716, 1721-1732.) Dr. McFadden noted in November 2016 that Plaintiff was "quite anxious" but attributed this to Plaintiff's recent mammogram. (AR, Doc. No. 9-7 at PageID 1155.) In June 2017, Dr. McFadden noted "some cognitive distortions" but also noted that Plaintiff's mood "appears to be somewhat alleviated." (*Id.* at PageID 1149.) Dr. McFadden stated in April 2018 that Plaintiff's memories of past trauma "do interfere with her concentration and persistence," but observed that Plaintiff presented with good reasoning and "fairly good" insight and judgment. (AR, Doc. No. 9-8 at PageID 1628.) In March 2019, Dr. McFadden noted Plaintiff's reports of low self-esteem and "difficulties with [a] dysphoric mood" due to recollections of early abuse, but did not document his own observations of Plaintiff's mood. (*Id.* at PageID 1742.) He also noted Plaintiff's statement that the vivid recollections were "not very frequent." (*Id.* at PageID 1724.)

The ALJ also appropriately addressed Dr. McFadden's treatment notes and other evidence of Plaintiff's mental impairments when he discussed the medical evidence in

13

connection with formulating Plaintiff's RFC.[3] (AR, Doc. No. 9-3 at PageID 342-44.) The ALJ acknowledged that Plaintiff reported experiencing intrusive thoughts and sleep issues related to childhood trauma. (AR, Doc. No. 9-3 at PageID 342.) He explained that Plaintiff received psychotherapy from Dr. McFadden beginning in January 2016 and that she continued to report nightmares and intrusive thoughts. (*Id.* at PageID 342-42.) The ALJ also noted that Plaintiff reported nervousness, impaired ability to trust others, and dysphoria at times. (*Id.* at PageID 343.) He balanced this evidence with other evidence in the record, including Plaintiff's reports of "improved mood with medication and benefit from psychotherapy," and her statement that she "was able to tell the difference when she missed her psychotropic medication." (*Id.*) The ALJ explained that Plaintiff reported only occasional depression and sleep difficulties during the August 2015 consultative psychological evaluation. (*Id.* at PageID 343.) The ALJ also noted that the consultative psychologist documented essentially normal objective mental status findings and concluded that the clinical interview warranted no mental health diagnosis. (*Id.*)

Additionally, the ALJ evaluated the specialization and treatment relationship factors when he acknowledged that Dr. McFadden had a treating relationship with Plaintiff and specialized in mental health. (AR, Doc. No. 9-3 at PageID 345.) The ALJ balanced these factors with the other required factors. (*Id.*) Because the ALJ's conclusions are supported by substantial evidence, the Court cannot reverse them.

---

[3] This Court may consider the evaluation of the evidence elsewhere in the decision to determine whether substantial evidence supports an ALJ's conclusions. *See, e.g., Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. Appx. 426, 435 (6th Cir. 2014); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016).

### C. Plaintiff's Remaining Arguments Are Not Well-Taken

Plaintiff argues that the ALJ "never once acknowledged that Dr. McFadden expressly declared that his opinions dated back to the relevant time period." (Reply, Doc. No. 15 at PageID 3849.) However, the ALJ *did* acknowledge the time period that Dr. McFadden evaluated in his February 2021 opinion: "Dr. McFadden indicated that the claimant's limitations had existed dating to the start of treatment in January of 2016, and would cause an absenteeism rate of three days per month." (AR, Doc. No. 9-3 at PageID 345; citing AR, Doc. No. 9-12 at PageID 3342.)

Plaintiff also argues that the ALJ erred by "discredit[ing] Dr. McFadden's treating source opinions because his opinions were produced after the date last insured expired, and therefore, were not probative in value." (SE, Doc. No. 12 at PageID 3828.) As an initial matter, since Dr. McFadden's February 2021 checkbox form opinion is patently deficient, the ALJ did not reversibly err by discounting Dr. McFadden's suggested onset date. *Price*, 342 F. App'x at 176; *Hernandez*, 644 F. App'x at 474-75; *Dollinger*, 2023 WL 1777386, at *4. More importantly, the ALJ provided good reasons for discounting Dr. McFadden's suggested onset date, namely: Dr. McFadden completed the February 2021 form almost two years after Plaintiff's date last insured, and he did so after Plaintiff was hospitalized for COVID-19, after her anxiety symptoms had increased due to the COVID-19 pandemic, and after she had a post-date last insured motor vehicle accident. (AR, Doc. No. 9-3 at PageID 345-46; citing AR, Doc. No. 9-10 at PageID 2806-07, 2854; Doc. No. 9-12 at PageID 3509). Thus, this argument is also not well-taken.

15

Finally, Plaintiff argues that although the ALJ assigned great weight to some portions of Dr. McFadden's opinions, he did not account for these limitations in the RFC. (SE, Doc. No. 12 at PageID 3829-31; Reply, Doc. No. 15 at PageID 3848-49.) In his decision, the ALJ gave great weight to "Dr. McFadden's statements regarding [Plaintiff's] limitations in concentration, stress management, pace, and impaired ability to perform complex or detailed work." (AR, Doc. No. 9-3 at PageID 345; citing AR, Doc. No. 9-7 at PageID 1159; Doc. No. 9-8 at PageID 1628; Doc. No. 9-12 at PageID 3341-42.) The ALJ explained that these opinions were consistent with treatment notes that documented Plaintiff's reports of "impaired concentration due to intrusive thoughts and poor sleep due to nightmares." (AR, Doc. No. 9-3 at PageID 345.)

In the RFC, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple, routine tasks in low-stress work environments. (AR, Doc. No. 9-3 at PageID 339.) The ALJ defined "low stress" as "jobs having only occasional decision-making and occasional changes in work setting." (*Id.*) The ALJ limited Plaintiff to only occasional contacts with coworkers and supervisors, and precluded any contact with the public. (*Id.*)

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The Court finds that the ALJ's RFC limitations account for Dr. McFadden's opinions and are supported by substantial evidence. The ALJ's explanation shows that he considered the regulatory factors for the evaluation of opinion evidence to evaluate Dr. McFadden's opinions. The ALJ's decision to include certain mental limitations in the RFC to account for these

opinions is within the permissible "zone of choice" – and because the ALJ's findings are supported by substantial evidence, they must be affirmed. *Mullen,* 800 F.2d at 545.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 12) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge